# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| KISSEL FAMILY TRUST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
|  | ) **CIVIL ACTION NO.** |
| Plaintiff, | ) ) 2: _04_-cv-_470_-FtM-29. $SPC$ |
|  | ) |
| vs. | ) CLASS ACTION COMPLAINT |
|  | ) |
| RADIATION THERAPY SERVICES, INC., DANIEL E. DOSORETZ, HOWARD M. SHERIDAN, DAVID M. KOENINGER, JOSEPH BISCARDI, JAMES H. RUBENSTEIN, and MICHAEL J. KATIN, | ) ) ) **JURY TRIAL DEMANDED** ) ) |
|  | ) |
| Defendants. | ) ) |

Plaintiff, Kissel Family Trust ("Plaintiff"), individually and on behalf of all other persons similarly situated, by its undersigned attorneys, for its complaint against defendants, alleges the following based upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Radiation Therapy Services, Inc. ("Radiation Therapy" or the "Company") securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

-1-

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of Radiation Therapy between June 17, 2004 and September 8, 2004, seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

.

**PARTIES**

6.     Plaintiff Kissel Family Trust as set forth in the accompanying certification, incorporated by reference herein, purchased Radiation Therapy securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Radiation Therapy is a Florida corporation that maintains its principal place of business within this judicial district at 2334 Colonial Boulevard, Fort Myers, FL 33907.

8.     Defendant Daniel E. Dosoretz ("Dosoretz") was, at all relevant times, the Company's President and Chief Executive Officer.

9.     Defendant Howard M. Sheridan ("Sheridan") was, at all relevant times, the Company's Chairman of the Board.

10.     Defendant David M. Koeninger ("Koeninger") was, at all relevant times, the Company's Executive Vice President and Chief Financial Officer.

11.     Defendant Joseph Biscardi ("Biscardi") was, at all relevant times, the Company's Corporate Controller and Chief Accounting Officer.

12.     Defendant James H. Rubenstein ("Rubenstein") was, at all relevant times, the Company's Medical Director, Secretary and Director.

13.     Defendant Michael J. Katin ("Katin") was, at all relevant times, a Director at the Company.

14.     Defendants Dosoretz, Sheridan, Koeninger, Biscardi, Rubenstein, and Katin, are collectively referred to hereinafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Radiation Therapy were privy to non-public information concerning its business, finances, products, markets and present and

-3-

future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

15. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

16. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Radiation Therapy, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and

misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.    As officers and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Radiation Therapy, each of the Individual Defendants had access to the adverse undisclosed information about Radiation Therapy financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about

Radiation Therapy and its business issued or adopted by the Company materially false and misleading.

19.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

20.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Radiation Therapy securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Radiation Therapy business, operations, management and the intrinsic value of Radiation Therapy securities; and (ii) caused Plaintiff and other members of the Class to purchase Radiation Therapy securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Radiation Therapy from June 17, 2004 through September 8, 2004 and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all

relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Radiation Therapy's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Radiation Therapy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Radiation Therapy; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

26.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

27.  Radiation Therapy is a provider of radiation therapy services to cancer patients.  The Company owns, operates and manages treatment centers, focused exclusively on providing comprehensive radiation treatment alternatives ranging from conventional external beam radiation to newer, technologically advanced options.  The Company provides radiation therapy in 41 freestanding and 11 hospital-based treatment centers, of which 19 were internally developed, 22 were acquired and 11 are hospital-based.  Its treatment centers are clustered into 17 regional networks in eight states, including Alabama, Delaware, Florida, Kentucky, Maryland, Nevada, New York and North Carolina.  The Company offers a full spectrum of radiation therapy alternatives, including conventional external beam radiation therapy and advanced services, such as intensity modulated radiation therapy, three-dimensional conformal treatment planning, patient targeting systems, brachytherapy and stereotactic radiosurgery.

-8-

28.     On or about, June 15, 2004, Radiation Therapy filed with the SEC a Form S-1/A Registration Statement (the "Registration Statement") for the IPO.  The Company's Form S-1/A was signed by the Individual Defendants.

29.     On June 18, 2004, the Company announced that the underwritten initial public offering of 5.5 million shares of its common stock had been priced at $13 per share. The shares of its common stock would trade on the NASDAQ under the symbol "RTSX".  The Company would offer 4 million newly issued shares of common stock in the initial public offering which would result in gross proceeds to the Company of approximately $52 million.  In addition, certain shareholders would offer 1.5 million currently outstanding shares of common stock in the initial public offering at the same price.

30.     On or about June 18, 2004, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and $5,500,000 shares of Radiation Therapy were sold to the public.  The Company raised approximately $71.5 million.

31.     In the Company's June 18, 2004 Prospectus, the Company stated:

> Our growth strategy is to further increase our market share within our established regional networks and selectively expand into new regions. The key elements of our growth strategy are to:
>
> Increase Revenue and Profitability of Our Existing Treatment Centers
>
> We plan to increase revenue and profitability at our treatment centers within established regional networks by:
>
> • increasing clinical referrals from physicians;
> • expanding our offering of advanced treatment services;
> • focusing on the continued implementation of standardized treatment protocols;
> • adding additional radiation oncologists; and
> • entering into additional payor relationships.

-9-

Develop New Treatment Centers Within Our Existing Regional Networks

We plan to develop treatment centers to expand our existing regional networks. We have experience in the design and construction of radiation treatment centers, having developed 19 treatment centers located in Florida, Maryland, Nevada and New York. Our newly-developed treatment centers typically achieve positive cash flow within six to twelve months after opening. We currently have two new treatment centers under development within our existing regional networks, with one expected to replace an existing treatment center.

Selectively Enter New Regions

We plan to selectively expand into new regions through acquisition, new treatment center development and strategic alliances and joint ventures. We evaluate potential expansion into new regions based on:

• demographic characteristics, including the number and concentration of Medicare recipients, population trends and historical and projected patient population growth and radiation treatment volumes;
• the extent to which we may have any pre-existing relationships with physicians or hospitals;
• the current competitive landscape of existing free-standing or hospital-based radiation treatment centers;
• the payor environment; and
• the regulatory environment.

Expand Through Acquisitions. We plan to enter new regions through the acquisition of established treatment centers that provide us the opportunity to leverage our current infrastructure. We seek to acquire treatment centers with leading radiation oncologists, strong clinical referral sources and substantial prospects for growth. We believe that significant opportunity exists to add value to acquired treatment centers by providing advanced radiation therapy technology and services and by implementing our proven operating model which includes our standardized operating systems. We have entered eight new regions through acquisitions and have acquired 22 treatment centers to date.

-10-

Expand Through New Treatment Center Development. Where desirable, we plan to enter new regions by internally developing new radiation treatment centers. We have established seven new regional networks located in Florida, New York and Maryland by internally developing new radiation treatment centers. We currently plan to develop new treatment centers in two new regions located in Rhode Island and California.

Expand Through Strategic Alliances and Joint Ventures. We also plan to enter new regions through strategic alliances and joint ventures. These strategic alliances and joint ventures vary by region and can include providing administrative services, technology services and professional services or any combination thereof. To date, we have established these arrangements primarily with hospitals seeking our expertise in providing high-quality, cost-effective radiation therapy. Our desire and ability to enter into strategic alliances and joint venture arrangements depends on the regulatory and competitive environment and other economic factors. We have experience in effectively structuring these arrangements in a manner designed to meet the needs of multiple constituencies, including the physicians, the hospitals and regulatory authorities. Strategic alliances and joint ventures provide us with alternative methods to enter attractive new markets.

32.     With respect to how the Company would use this proceeds of the IPO, the Company stated:

We estimate that our net proceeds from the sale of the shares of common stock we are offering will be approximately $46.8 after deducting underwriting discounts and commissions and estimated offering expenses payable by us based upon the initial public offering price of $13.00 per share. We will not receive any proceeds from the sale of shares by the selling shareholders.

We are required to use 50% of the net proceeds of this offering to repay indebtedness under the term loans of our existing senior credit facility. We intend to use approximately $44.1 million of our net proceeds from the offering to repay borrowings outstanding under the term loans of our existing senior credit facility. As of December 31, 2003, we had $51.9 million of borrowings outstanding under our senior credit facility, consisting of approximately $28.2 million under our revolving line of credit and $23.7 million under our existing term

loan, which bore interest at a weighted average rate of 3.76% annually. As of March 31, 2004, we had $40.0 million of additional borrowings outstanding under our third amended and restated senior secured credit facility pursuant to our add-on term loan facility used to fund our special distribution. Of the repayments of our outstanding borrowings, we anticipate that we will repay borrowings from our existing term loan, which matures on April 15, 2007, and add-on term loan facility, which matures on March 31, 2009, on a pro rata basis in the amounts of $8.4 million and $15 million, respectively, from our net proceeds from the offering. See "Management's Discussion and Analysis of Financial Condition and Results of Operation – Liquidity and Capital Resources".

In addition, we intend to use approximately $2.7 million of our net proceeds to repay the principal and accrued interest on several outstanding loans to certain of our directors, officers, principal shareholders, employees and their relatives and certain entities in which they own an interest. All of these loans are demand notes that bear interest at 8% per year, except for demand notes in the amount of $569,000 which bear interest at the prime rate.

We also intend to apply the balance of our remaining net proceeds of $20.7 to pay down our revolving line of credit under our third amended and restated senior secured credit facility.

Pending their application to the intended uses, we will invest the net proceeds of this offering in cash, cash equivalents, money market funds, or short-term interest-bearing, investment-grade securities.

33.    With respect to related party transactions, the Company stated:

As shown below, there are certain transactions and relationships between us and our directors, officers and the principal shareholders set forth in our Principal and Selling Shareholders table included elsewhere in this prospectus, which have occurred during the last three fiscal years. We believe that the material terms of the various transactions were as favorable as could have been obtained from unrelated third parties. After the offering, any transactions between us and our directors, officers and principal shareholders and their affiliates will be approved by the Audit Committee of our board of directors.

Administrative Services Agreements

-12-

In Maryland, Nevada, New York and North Carolina, we have administrative services agreements with professional corporations owned by certain of our directors, officers and principal shareholders, who are licensed to practice medicine in such states. We have entered into these administrative services agreements in order to comply with the laws of such states which prohibit us from employing physicians. Our administrative services agreements generally obligate us to provide treatment center facilities, staff and equipment, accounting services, billing and collection services, management and administrative personnel, assistance in managed care contracting and assistance in marketing services. Terms of the agreements are typically 20-25 years. We receive a monthly fixed fee for our services. Our Chairman, Howard M. Sheridan, M.D., our Chief Executive Officer and President, Daniel E. Dosoretz, M.D., our Medical Director, James H. Rubenstein, M.D., a director, Michael J. Katin, M.D., and a principal shareholder, Graciela R. Garton, M.D., own interests in these professional corporations ranging from 0% to 100.0%. The administrative services fees paid to us by such professional corporations under the administrative services agreements were approximately $8.8 million, $15.7 million and $21.8 million in 2001, 2002 and 2003, respectively.

Lease Arrangements with Entities Owned by Related Parties

We lease certain of our treatment centers and other properties from related parties. We have entered into various lease arrangements with entities owned by Drs. Sheridan, Dosoretz, Rubenstein, Katin, Garton, a principal shareholder, Daniel Galmarini, and certain of our shareholders and employees. Their ownership interests in these entities range from 0% to 100%. These related party leases have expiration dates through May 31, 2016 and provide for annual lease payments ranging from approximately $30,000 to $392,000. The aggregate lease payments we made to the entities owned by these related parties were approximately $1,200,000, $1,853,000, $2,325,000 and $476,000 in 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively.

In October 1999, we entered into a sublease arrangement with a partnership which is owned by certain of our shareholders to lease space to the partnership for an MRI center in Mount Kisco, New York. Sublease rentals paid by the partnership to us were approximately $265,000, $497,000, $569,000 and $141,000 during

-13-

2001, 2002, 2003, and for the three months ended March 31, 2004, respectively.

Indebtedness with Related Parties

We provide funds to MRSJ, Inc., a provider of diagnostic imaging services, which is also owned by certain of our directors, officers, principal shareholders, shareholders and employees. The funds are for start-up costs and monthly charges for the allocated costs of our staff who perform services on behalf of MRSJ, Inc. Drs. Sheridan, Dosoretz, Katin, Rubenstein and Garton as well as Mr. Galmarini each own a 12.5% interest in MRSJ, Inc. At December 31, 2002, 2003 and for the three months ended March 31, 2004, MRSJ, Inc. was indebted to us in the amount of $41,000, $87,000 and $116,000, respectively. Interest is not charged on the balance. We will not make any further loans to MRSJ, Inc.

We provided funds to certain land partnerships and Devoto Construction, Inc., a general contractor, which is also owned by certain of our directors, officers, principal shareholders, shareholders and employees. Drs. Sheridan, Dosoretz, Rubenstein, Katin and Garton as well as Mr. Galmarini each own a 11.1% interest in Devoto Construction, Inc. These entities were indebted to us in the amount of $5,000, $6,000 and $500 at December 31, 2002, 2003 and at March 31, 2004 respectively. We also made payments to Devoto Construction, Inc. for remodeling of our treatment centers. Payments were $129,000, $336,000, $771,000 in 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively. Simultaneously with the closing of this offering, Devoto Construction, Inc. will be acquired by us. Pursuant to a binding agreement between the parties, we will acquire 100% of the outstanding shares of Devoto Construction, Inc. or all of the assets of Devoto Construction, Inc., at our option, for an aggregate purchase price of $3,528,000, which shall be paid in the form of our common stock based on the initial public offering price. The aggregate amount of shares of our common stock to be issued in connection with this purchase is 271,385, based upon the initial public offering price of $13.00 per share.

At March 31, 2004, we were indebted to certain of our directors, officers, principal shareholders and their relatives, and certain entities in which they own an interest, as detailed below:

-14-

Dr. Sheridan holds promissory notes in the principal amount of $345,608. The notes bear interest at the rate of 8.0% per annum and are due on demand. At March 31, 2004, $526,579 in principal and accrued interest was outstanding under these notes.

Mildred Sheridan, Dr. Sheridan's mother, holds a promissory note in the principal amount of $200,000, which bears interest at the prime rate (4.0% at December 31, 2003) and is due on demand. At March 31, 2004, $200,000 in principal and accrued interest was outstanding under this note.

Dr. Sheridan, as trustee under the will of his father, holds promissory notes in the principal amounts of $99,000 and $80,000, respectively, which bear interest at the prime rate and are due on demand. At March 31, 2004, $179,000 in principal and accrued interest was outstanding under these notes.

Natalie Driggers, Dr. Sheridan's wife's aunt, holds promissory notes in the principal amounts of $100,000 and $90,000, respectively. The notes bear interest at the prime rate and are due on demand. At March 31, 2004, $190,000 in principal and accrued interest was outstanding under these notes.

Dr. Dosoretz holds promissory notes in the principal amount of $257,273, which bear interest at the rate of 8.0% per annum and are due on demand. At March 31, 2004, $390,233 in principal and accrued interest was outstanding under these notes.

Dr. Katin, holds promissory notes in the principal amount of $276,973. The notes bear interest at the rate of 8.0% per annum and are due on demand. At March 31, 2004, $407,390 in principal and accrued interest was outstanding under these notes.

Dr. Rubenstein holds promissory notes in the principal amount of $319,665. The notes bear interest at the rate of 8.0% per annum and are due on demand. At March 31, 2004, $465,045 in principal and accrued interest was outstanding under these notes.

Drs. Katin, Dosoretz and Sheridan are partners in a partnership that acquired a promissory note in the principal amount of $320,000 that bears interest at the prime rate. During 2002, this promissory note was repaid by us.

We plan to pay $2.7 million of these loans with the net proceeds of this offering. We do not plan on borrowing from or providing loans to any of our affiliates in the future.

We also have a loan outstanding to Dr. Garton. The note bears interest at prime rate and is due on September 1, 2017. At March 31, 2004, $290,835 in principal and accrued interest was outstanding.

\*\*\*

We currently contract with Radiology Regional Center, P.A., which was owned in part by Dr. Sheridan, to provide PET scans to our patients. We reimburse Radiology Regional Center, P.A. for services, supplies, equipment and personnel to provide these services. Purchases by us from this company were approximately $291,000, $270,000, $530,000 and $87,000 for 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively.

We provide medical parts and equipment sales to radiation treatment centers in Argentina, Costa Rica and Guatemala, which are owned by a family member of Dr. Dosoretz. Sales of medical equipment to these radiation treatment centers were approximately $156,000, $181,000, $267,000 and $11,000 in 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively. Gain on the sale of the medical equipment was approximately $14,000, $16,000, $24,000 and $1,000 in 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively. Balances in accounts receivable were approximately $94,000, $149,000, $211,000 and $212,000 at December 31, 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively. In August 2000, we financed the purchase of a nucletron high-dose remote after loader by the Costa Rica operation. A $288,000 note, including an effective interest rate of 16.075% was taken in exchange for the equipment. At December 31, 2002 and 2003, a balance of $188,000 and $149,000 remained outstanding on this note. The current balance as of March 31, 2004 is $149,000.

We provide billing and collection services to Riverhill MRI Specialists, P.C., a provider of medical services in New York which is owned by certain of our directors, officers, principal shareholders, shareholders and employees. Drs. Sheridan, Dosoretz, Katin, Rubenstein and Garton and Mr. Galmarini each own a 10.4% interest in Riverhill MRI Specialists, P.C. The fees paid to us by such

-16-

professional corporation for the billing and collection services was approximately $3,600, $127,300, $185,000 and $19,000 for 2001, 2002, 2003 and for the three months ended March 31, 2004, respectively.

In October 2003, we contracted with Batan Insurance Company SPC, LTD, a newly-formed entity, which is owned by Drs. Katin, Dosoretz, Rubenstein and an employee to provide us with malpractice insurance coverage. During 2003, we paid premium payments to Batan Insurance Company SPC, LTD of approximately $1,721,000 for coverage from October 2003 to October 2004 and $687,000 in the period ended March 31, 2004. In prior years, we obtained our insurance from a non-affiliated insurance company. The new insurance company is managed by AON Corporation, pursuant to a management agreement.

There are currently five family members of certain directors, officers and shareholders who are employed by us. Total compensation paid to family members was $336,184, $366,822 and $456,126 for 2001, 2002 and 2003, respectively.

34.    On June 29, 2004, the Company announced that the underwriters of its recently completed initial public offering of common stock had exercised in full their over-allotment option to purchase an additional 825,000 shares from certain selling shareholders at the original initial public offering price of $13 per share.  The exercise of the over-allotment increased the size of the initial public offering to 6.325 million shares of common stock, of which 4 million were newly issued shares sold by the Company and 2.35 million were existing shares sold by the selling shareholders.

35.    The statements referenced above in ¶¶ 28-34 were each materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others:  (1) that Company's IPO was purely a liquidity event for management/owners–not a source of growth capital for the Company because 100% of the IPO proceeds went into the hands of the

-17-

Company's primary shareholders; (2) that the numerous related party transactions by the Company increased the risk of its business model running afoul of State and Federal laws governing corporate practice of medicine, fee splitting and physician-referrals; and (3) that organic revenue growth had slowed dramatically and could be further disrupted in January due to changes in the way medical oncologists run their businesses.

### The Truth Begins to Emerge

36.     On September 9, 2004, Banc of America Securities ("Banc of America") initiated coverage of Radiation Therapy Services with a "sell" rating and an $11 target price.  Banc of America said the Company's IPO "was purely a liquidity event for management/owners--not a source of growth capital for the company."  The research house noted that following the IPO management "gifted itself another 5% of the company via new option grants."  Banc of America also drew attention to the fact that in 2003, Radiation Therapy paid $6.6 million to outside companies controlled by senior management, underlining the increased regulatory risk of a business model that could "run afoul of State and Federal laws governing corporate practice of medicine, fee splitting and physician-referrals."  In addition, Banc of America said that although revenue growth remained "impressive," organic revenue growth had slowed "dramatically" and could be further disrupted in January due to changes in the way medical oncologists run their business.  In conclusion, the research house said: "We simply cannot recommend purchasing the stock until the company's board structure (currently four insiders, just three independent directors) and extensive related party relationships are materially overhauled."

37.     News of this shocked the market, shares of Radiation Therapy fell $1.66 per share, or 11.98 percent, to close at $12.20 per share on unusually heavy trading volume.

## **UNDISCLOSED ADVERSE FACTS**

38.     The market for Radiation Therapy 's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Radiation Therapy 's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Radiation Therapy securities relying upon the integrity of the market price of Radiation Therapy 's securities and market information relating to Radiation Therapy , and have been damaged thereby.

39.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Radiation Therapy 's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Radiation Therapy 's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Radiation Therapy and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other

members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

41.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Radiation Therapy , their control over, and/or receipt and/or modification of Radiation Therapy allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Radiation Therapy , participated in the fraudulent scheme alleged herein.

42.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

43.    During the Class Period and with its stock trading at inflated levels, insiders sold 1,852,071 shares of Radiation Therapy for gross proceeds totaling more than $24 million as evidenced by the chart below:

-20-

| NAME | DATE | SHARES/PRICE | PROCEEDS |
|------|------|--------------|----------|
| Daniel E. Dosoretz | 06/23/2004<br>06/30/2004 | 421,387 @ $13.000<br>231,762 @ $13.000<br>*Total Shares Sold:653,149* | $5,478.031.00<br>$3,012,906.00<br>*Total Proceeds:*<br>*$8,490,937.00* |
| Michael J. Katin | 06/23/2004<br>06/30/2004 | 290,118 @ $13.000<br>159,565 @ $13.000<br>*Total Shares Sold: $449,683* | $3,771,534.00<br>$2,074,345.00<br>*Total Proceeds:*<br>*$5,845,879.00* |
| James H. Rubenstein | 06/23/2004<br>06/30/2004 | 317,657 @ $13.000<br>174,711 @ $13.000<br>*Total Shares Sold: $492,368* | $4,129,541.00<br>$2,271,243.00<br>*Total Proceeds:*<br>*$6,400,784.00* |
| Howard M. Sheridan | 06/23/2004<br>06/30/2004 | 165,723 @ $13.000<br>91,148 @ $13.000<br>*Total Shares Sold: 256,871* | $2,154,399.00<br>$1,184,924.00<br>*Total Proceeds:*<br>*$3,339,323.00* |
| | | *Total Shares Sold:*<br>*1,852,071* | *Total Proceeds:*<br>*$24,076,923.00* |

(Emphasis added.)

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

44.    At all relevant times, the market for Radiation Therapy securities was an efficient market for the following reasons, among others:

(a) Radiation Therapy stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Radiation Therapy filed periodic public reports with the SEC and the NASDAQ;

(c) Radiation Therapy regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on

-21-

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  Radiation Therapy  was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

45.    As a result of the foregoing, the market for Radiation Therapy  securities promptly digested current information regarding Radiation Therapy  from all publicly-available sources and reflected such information in Radiation Therapy 's stock price. Under these circumstances, all purchasers of Radiation Therapy  securities during the Class Period suffered similar injury through their purchase of Radiation Therapy  securities at artificially inflated prices and a presumption of reliance applies.

### NO SAFE HARBOR

46.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was

false, and/or the forward-looking statement was authorized and/or approved by an executive officer

of Radiation Therapy who knew that those statements were false when made.

### FIRST CLAIM
**Violation Of Section 10(b) Of
The Exchange Act Against And Rule 10b-5
<u>Promulgated Thereunder Against All Defendants</u>**

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

48.    During the Class Period, defendants carried out a plan, scheme and course of conduct

which was intended to and, throughout the Class Period, did: (i) deceive the investing public,

including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

members of the Class to purchase Radiation Therapy securities at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took

the actions set forth herein.

49.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue

statements of material fact and/or omitted to state material facts necessary to make the statements

not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud

and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

market prices for Radiation Therapy securities in violation of Section 10(b) of the Exchange Act

and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal

conduct charged herein or as controlling persons as alleged below.

50.    Defendants, individually and in concert, directly and indirectly, by the use, means or

instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations

and future prospects of Radiation Therapy as specified herein.

51.     These defendants employed devices, schemes, and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Radiation Therapy value and

performance and continued substantial growth, which included the making of, or the participation

in the making of, untrue statements of material facts and omitting to state material facts necessary

in order to make the statements made about Radiation Therapy and its business operations and

future prospects in the light of the circumstances under which they were made, not misleading, as

set forth more particularly herein, and engaged in transactions, practices and a course of business

which operated as a fraud and deceit upon the purchasers of Radiation Therapy securities during the

Class Period.

52.     Each of the Individual Defendants' primary liability, and controlling person liability,

arises from the following facts: (i) the Individual Defendants were high-level executives and/or

directors at the Company during the Class Period and members of the Company's management team

or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities

as a senior officer and/or director of the Company was privy to and participated in the creation,

development and reporting of the Company's internal budgets, plans, projections and/or reports;

(iii) each of these defendants enjoyed significant personal contact and familiarity with the other

defendants and was advised of and had access to other members of the Company's management

team, internal reports and other data and information about the Company's finances, operations, and

sales at all relevant times; and (iv) each of these defendants was aware of the Company's

dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

53.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Radiation Therapy operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Radiation Therapy securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Radiation Therapy publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Radiation Therapy securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Radiation Therapy  was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Radiation Therapy  securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against the Individual Defendants**

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Radiation Therapy  within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-

-26-

making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Radiation Therapy and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 20, 2004

**BARKER, RODEMS & COOK, P.A.**

Chris A. Barker, Esquire
Florida Bar No.  885568
300 West Platt Street, Suite 150
Tampa, Florida 33606
(813) 489-1001

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA  19004
Telephone: (610) 667-7706

**Attorneys for Plaintiff**

-28-

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

*KISSEL FAMILY TRUST*

I, (print name) *SHELDON KISSEL, TRUSTEE* ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the Complaint and authorizes its filing.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's transaction(s) in the Radiation Therapy Services, Inc. (Nasdaq: RTSX) security that is the subject of this action during the Class Period is/are as follows[1]:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 800 | BUY | 7-6-04 | 14.53 |
| 800 | SELL | 8-6-04 | 12.90 |
| | | | |
| | | | |

[1] List additional transactions on a separate sheet of paper, if necessary.

5.  Plaintiff has complete investment authority and is the agent and attorney-in-fact with full power and authority to bring a suit to recover for investment losses.

6.  During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party or a class in the following actions filed under the federal securities laws (if none, so indicate): _____.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this *15th* day of *SEPTEMBER*, 200*4*.

Signature

*SHELDON KISSEL*
Print Name